UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRENDA MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-30187-MGM |
| | ) | |
| CHARLES D. BAKER, GOVERNOR OF | ) | |
| MASSACHUSETTS; MARYLOU SUDDERS, | ) | |
| SECRETARY OF MA HEALTH AND | ) | |
| HUMAN SERVICES; and LINDA S. | ) | |
| SPEARS, COMMISSIONER OF MA | ) | |
| DEPARTMENT OF CHILDREN AND | ) | |
| FAMILIES, | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION
TO DISMISS THE PRO SE AMENDED COMPLAINT
(Dkt. No. 31)

ROBERTSON, U.S.M.J.

    I.    INTRODUCTION

On October 23, 2015, plaintiff Brenda Murphy ("Plaintiff"), who is self-represented in

this case, filed a complaint against Charles D. Baker in his official capacity as Governor of

Massachusetts; Marylou Sudders in her official capacity as Secretary of the Massachusetts

Executive Office of Health and Human Services; and Linda S. Spears in her official capacity as

the Commissioner of the Massachusetts Department of Children and Families ("DCF") (Dkt. No.

1 at 1, ¶¶ 2-4). On December 16, 2015, the defendants filed a motion to dismiss the complaint

on the grounds that the complaint failed to comply with the pleading requirements set forth in the

Federal Rules of Civil Procedure and failed to state a claim against any of the defendants (Dkt.

No. 11), which motion was referred to me for Report and Recommendation. *See* Fed. R. Civ. P.

72 and 28 U.S.C. § 636(1)(B). I recommended that the defendants' motion to dismiss be denied

1

without prejudice and that Plaintiff be granted forty-five (45) days from issuance of the court's order to amend her complaint to comply with the requirements of the Federal Rules of Civil Procedure (Dkt. No. 22). The presiding District Judge adopted the Report and Recommendation (Dkt. No. 23). Plaintiff filed an amended complaint on November 10, 2016 (Dkt. No. 27). On December 1, 2016, the defendants moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which motion was referred to me for Report and Recommendation (Dkt. Nos. 31, 34).

While Plaintiff has made an effort to amend her complaint, those amendments have not cured fundamental defects that were apparent in the initial complaint. For the reasons set forth below, I recommend that Plaintiff's amended complaint be dismissed with prejudice and that this case be closed on the court's docket.

## II. PARTIES AND ALLEGATIONS IN THE COMPLAINT

An extensive recitation of the facts is not warranted in view of the allegations in the amended complaint and the parties named therein. Thus, the following is an overview of the claims of wrongdoing asserted by Plaintiff, which, while somewhat abbreviated vis-à-vis her initial complaint, have not substantially changed. In 2003, Plaintiff adopted a young child from an orphanage in Poland, whom Plaintiff refers to as A.M. in the complaint (Dkt. No. 27 at 2, ¶ 9). Initially, A.M. had undiagnosed developmental delays. DCF was involved with the family at least as early as April 2008 (*id.* at 3, ¶ 14). On December 9, 2008, DCF social workers Kelly Tracy and Matthew Iwasinski gained access to Plaintiff's home during their investigation of an allegation of neglect made by A.M.'s pediatrician (*id.* at 3-4, ¶¶ 24-25). DCF supported the pediatrician's medical neglect allegation (*id.* at 4, ¶ 26). In January 2009, A.M. was diagnosed with fetal alcohol syndrome (*id.*, ¶ 32). On or around May 20, 2009, DCF, through Ms. Tracy,

petitioned the court on an emergency basis for removal of A.M. from the family home (*id.* at 5, ¶ 49). According to Plaintiff, on May 20, 2009 and during ensuing court and administrative proceedings related to Plaintiff's parental rights to the care, custody and management of A.M., Ms. Tracy made misrepresentations or failed to disclose relevant information to the court (*id.* at 5-6, ¶¶ 49-51, 60, 64), and DCF failed to comply with its regulations mandating the timing of required steps related to allegations of medical neglect (*e.g.*, *id.* at 7, ¶ 70). A judge of the Massachusetts Juvenile Court who allegedly was biased, unfairly ruled in favor of DCF and against Plaintiff, thereby denying Plaintiff due process in the proceeding in which her familial rights to the care and custody of A.M. were terminated (*id.* at 8, ¶ 74). In Plaintiff's initial complaint, she represented that the Massachusetts Appeals Court affirmed the judgment of the Massachusetts Juvenile Court and that the Massachusetts Supreme Judicial Court denied further appellate review (Dkt. No. 1 at 27-28, ¶¶ 58-60). *See Voltaire v. Westchester County Dept. of Soc. Servs.*, No. 11-CV-8876 (CS), 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) (when a party is self-represented, a court properly may consider the allegations in an initial complaint to supplement the allegations in an amended complaint because the court is permitted to rely on matters of public record, including prior filings in an action).

In Plaintiff's amended complaint, she has again named as defendants Charles Baker in his official capacity as Governor of the Commonwealth of Massachusetts; Marylou Sudders in her official capacity as Secretary of the Massachusetts Executive Office of Health and Human Services; and Linda S. Spears, in her official capacity as Commissioner of the Massachusetts Department of Children and Families (Dkt. No. 27 at 1-2, ¶¶ 4-6). Plaintiff claims that these defendants have violated her constitutional right to procedural due process (Count I); her constitutional right to substantive due process (Count II); her right to effective assistance of

counsel under the Sixth Amendment (Count III); and her right to be free from unreasonable searches and seizures under the Fourth Amendment (Count IV).  She has also asserted a general violation of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670 et seq. ("AACWA") (Count V), and a violation of section 671(a)(29) of the AACWA (Count IV) (*id.* at 9-11, ¶¶ 83-102).  As relief, the amended complaint prays that DCF be directed to return A.M. to Plaintiff's custody or provide non-supervised visitation without limitation; that DCF remove Plaintiff's name from any and all registries associated with child abuse or neglect; that Plaintiff be reimbursed for all of the fees associated with this lawsuit; that she be paid the sum of $700,000 in compensatory and punitive damages due to the alleged violations of her constitutional rights; and that the court award all other damages or relief deemed fit (*id.* at 13, (a)-(e)).

III.  DISCUSSION

A.  Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level . . . and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor."  *Id.* (citing *Tasker v. DHL Rev. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  In resolving a motion to dismiss, the court employs a two-step approach.  *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  *A.G. ex. rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation

marks omitted).  Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  While "a complaint need not plead facts sufficient to make out a prima facie case or allege all facts necessary to succeed at trial," *id*. (citing *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a prima facie case "form[] 'part of the background against which a plausibility determination should be made.'"  *Id*. (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)).  "An analysis of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. at 109 (quoting *Grajales v. P.R. Ports Auth*., 682 F.3d 40, 44 (1st Cir. 2012)).  While a complaint filed by a self-represented litigant must be liberally construed, *see, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Plaintiff's self-represented status "does not excuse h[er] from complying with the Court's procedural rules."  *Rourke v. Rhode Island*, No. CA 07-066-ML, 2007 WL 1875795, at *2 (D.R.I. June 27, 2007).

B.  Defendant's Arguments

Without conceding that the amended complaint satisfies the requirements of Federal Rule of Civil Procedure 8, the defendants have moved for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because: (1) the Eleventh Amendment bars any award of money damages or reimbursement of legal fees against these defendants; (2) to the extent that Plaintiff's claims are not barred by the Eleventh Amendment, this court lacks jurisdiction over them since the relief requested would effectively reverse a state court judgment, a step which is outside of the jurisdiction of this court; and (3) there is no private right of action generally under the Adoption Assistance and Child Welfare Act ("AACWA"), on which Plaintiff bases Count V of

the amended complaint, or specifically under § 671(a)(29) of the AACWA, on which Plaintiff bases Count VI of the amended complaint.[1]  The defendants also seek dismissal of the amended complaint, which alleges violations of federal constitutional and statutory rights, on the grounds that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); *see also Wilson v. Moreau*, 440 F. Supp. 2d 81, 92 (D.R.I. 2006) (same).  In *Wilson*, the court, in fact, dismissed several of the plaintiff's claims for this reason.  *See id.*  Nonetheless, in view of Plaintiff's self-represented status, and because this is a pleading error that could be corrected if Counts I-IV otherwise stated cognizable claims, the court does not recommend dismissal of these counts because of Plaintiff's failure explicitly to invoke 42 U.S.C. § 1983 ("§ 1983").  "Section 1983 is a civil rights statute enacted in order to permit federal claims for damages against state and local officials who violate the Constitution."  *Wilson*, 440 F. Supp. 2d at 93.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  The first step in the analysis of a § 1983 claim "is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  Plaintiff has adequately identified the constitutional (and statutory) rights that she claims the defendants violated.  Accordingly, the court will treat Plaintiff's claims as if they were properly asserted under § 1983.

Even with this lenient reading, however, the court agrees with the defendants that the

---

[1] The defendants also contend that Plaintiff has failed to plead specific facts showing that she is entitled to relief.  The court does not deem it necessary to address this contention, as Plaintiff's claims are barred on other grounds.

amended complaint fails to state any claim upon which relief can be granted, and recommends that Plaintiff's amended complaint be dismissed with prejudice because a federal court cannot award Plaintiff any of the relief she seeks against these defendants.

1. Eleventh Amendment Sovereign Immunity (Counts I-VI)

Plaintiff has named each of the defendants exclusively in his or her official capacity (Dkt. No. 27 at 1-2, ¶¶ 4-6). "As a general matter, the Eleventh Amendment bars suits in federal courts against unconsenting states (including 'official capacity' suits against state hierarchs)." *Rosie D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002) (citing *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991)). It is well-settled that "[s]uits against state officers [like the defendants in this case] in their official capacities seeking damages are . . . barred by the Eleventh Amendment." *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 172-73 (D. Mass. 2013); *see also, e.g., McNulty v. Mass. Dept. of Children and Families*, Civil Action No. 11-11569-GAO, 2014 WL 4965403, at * 2 (D. Mass. Sept. 30, 2014) (plaintiff's claims for monetary damages against DCF and its employees in their official capacities fail because neither a state agency nor a state official in his official capacity may be sued for damages in a § 1983 action); *Wilmot v. Tracey*, 938 F. Supp. 2d 116, 141 (D. Mass. 2013) (it is well-settled that the Commissioner of DCF cannot be sued in his or her official capacity for damages in an action alleging a violation of § 1983); *Hootstein v. Collins*, 670 F. Supp. 2d 110, 113 (D. Mass. 2009) (same). The defendants, each of whom is sued exclusively in his or her official capacity, are entitled to dismissal of all of the claims in Plaintiff's amended complaint to the extent those claims seek compensatory or punitive damages or recovery of fees or costs.

Plaintiff's claims would have fared no better had she sued the defendants individually. "It is well-established that 'only those individuals who participated in the conduct that deprived

the plaintiff of [her] rights can be held liable.'" *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 146, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)). Plaintiff has not alleged that any of the defendants personally or directly participated in conduct that deprived her of her rights. Rather, Plaintiff has asserted that the actions and inactions of the defendants in their official capacities constituted a failure to meet their affirmative duties, resulting in the loss of Plaintiff's parental rights (Dkt. No. 27 at 9-10, ¶¶ 86, 89, 92, 95). Charitably read, these are allegations of supervisory liability. "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" *Velez-Rivera*, 437 F.3d at 156 (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)). Here, Plaintiff has failed to allege *any* link between any of the defendants and the DCF investigation and court proceedings that led to the termination of her familial interest in A.M. Nor has she alleged that the defendants were deliberately indifferent to the existence of a specific DCF policy or an omission in training that caused her alleged injuries and that might be a basis for supervisory liability. *See Wilmot*, 938 F. Supp. 2d at 142 (dismissing claims against DCF supervisors when the complaint did not sufficiently allege deliberate indifference to an unconstitutional policy or failure in training). Thus, even if Plaintiff had named any of the defendants individually, this complaint would not have stated any cognizable § 1983 claim for money damages against any of these defendants.

2. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Prayer for Custody of, or Visitation with, A.M. (Count I-VI)

The Eleventh Amendment also bars suits against state officials for declaratory relief for past unlawful conduct when there is no continuing violation and no need for injunctive relief.

*See Donald M. v. Matava*, 668 F. Supp. 703, 706 (D. Mass. 1987).  Here, however, fairly read, Plaintiff's amended complaint makes out a claim for a continuing violation of her rights insofar as she seeks future custody of, or unsupervised visitation with, A.M. (Dkt. No. 27 at 13, (a)).  This constitutes a request for prospective injunctive relief that would not be barred by the Eleventh Amendment, but it is relief that this court lacks jurisdiction to order.

"The *Rooker-Feldman* doctrine precludes federal jurisdiction over a challenge to a state court judgment to which the challenger was a party."  *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008)).  "Of particular relevance here, the *Rooker-Feldman* doctrine precludes a federal action if the relief requested would effectively reverse a state court decision or void its holding."  *Rago v. Samaroo*, 344 F. Supp. 2d 309, 313-14 (D. Mass. 2004) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994); *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003)).  In *Miller*, the First Circuit held that the *Rooker-Feldman* doctrine deprived the federal district court of jurisdiction to grant relief on the claims of parents whose child had been removed from them by the state after a court proceeding that resulted in a finding that the child's best interests required termination of the plaintiffs' parental rights.  *See Miller*, 586 F.3d at 56, 59.  *Miller* controls in the instant case.

The Massachusetts Juvenile Court entered a judgment terminating Plaintiff's rights to the care, custody and management of A.M.  Plaintiff was party to the state court proceeding that terminated her parental rights to A.M.  That proceeding, and the appeal therefrom, ended before she filed the complaint in the instant action.  *See Miller*, 586 F.3d at 59 (*Rooker-Feldman* bars jurisdiction whenever a party who lost in state court seeks review and rejection of that judgment

in federal district court); *Voltaire*, 2016 WL 4540837 at *9. Moreover, "[f]ederal courts' application of the *Rooker-Feldman* doctrine 'does not depend on what issues were actually litigated in the state court.'" *Miller*, 586 F.3d at 59 (quoting *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 33 (1st. Cir. 2004)). "The *Rooker-Feldman* doctrine . . . bars a district court from reviewing alleged constitutional claims that are 'inextricably intertwined' with decisions made in state judicial proceedings." *Voltaire*, 2016 WL 4540837 at *10 (citing *People United for Children, Inc. v. City of N.Y.*, 108 F. Supp. 2d 275, 285-86 (S.D.N.Y. 2000)). Thus, it does not help Plaintiff that her claims are based on her allegations about the conduct of DCF employees and the judge in the proceedings that resulted in the termination of her parental rights, such as the submission of false evidence and judicial bias, nor would her possible failure to raise these claims in the state court (a point on which the record is silent) save her claims in this court. *See id.* (citing cases); *see also Miller*, 586 F.3d at 59.[2]

Here, as in *Miller*, Plaintiff's request "for injunctive relief is an effort to do an end run around the state court's judgment." *Miller*, 586 F.3d at 59; *see also Voltaire*, 2016 WL 4540837, at *9. Because this court lacks subject matter jurisdiction over Plaintiff's claims to the extent she seeks custody of, or visitation with, A.M., Counts I-VI must be dismissed for lack of subject matter jurisdiction insofar as they are asserted in support of this claim for relief. *See Miller*, 586 F.3d at 59.

3. Plaintiff Fails to State a Claim for Removal of her Name From Any and All Child Abuse/Neglect Registries (Counts I-II)

Plaintiff's other request for relief is that her name "be removed from any and all registries

---

[2] In addition to the First Circuit, other courts have concluded that requests for injunctive relief similar to those stated by Plaintiff in this case are barred by the *Rooker-Feldman* doctrine. *See, e.g., Voltaire*, 2016 WL 4540837, at **9-11 (collecting cases); *Katz v. McVeigh*, 931 F. Supp. 2d 311, 334 (D.N.H. 2013).

associated with child neglect and/or abuse" (Dkt No. 27 at 13, (b)).  This is also a request for prospective injunctive relief that is not barred by the Eleventh Amendment.  As to this request, however, Plaintiff's amended complaint fails to state a claim for relief.

Under Massachusetts law, the name of an alleged perpetrator of child neglect or abuse "shall" be added to the DCF Registry of Alleged Perpetrators ("Registry") if the allegations of child abuse or neglect are supported and referred to the District Attorney and there is "substantial evidence" indicating that the alleged perpetrator was responsible for the abuse or neglect.  *See* 110 C.M.R. § 4.37.  An alleged perpetrator whose name is included in the Registry has the right to a Fair Hearing, *see* 110 C.M.R. § 10.06(11), which must be initiated by the alleged perpetrator.  *See* 110 C.M.R. § 10.08(1).  With certain exceptions set forth in the relevant regulation, "[t]he filing of a request for a Fair Hearing shall not stay or otherwise affect the implementation of the challenged decision."  110 C.M.R. § 10.09(1).  A Fair Hearing must be scheduled to be heard with 65 business days from DCF's receipt of a Fair Hearing request.  *See* 110 C.M.R. § 10.10(1).  A Fair Hearing proceeding may be continued at the request of the appellant, or stayed on the written request of a District Attorney's Office stating that there is an open criminal investigation.  *See id.*, §§ 10.10(4), (5).  In the case of a challenge to a decision by DCF to support a report of abuse or neglect, the appellant has the burden of proving, by a preponderance of the evidence, that DCF failed to demonstrate that there was reasonable cause to believe that a child was abused or neglected.  *See* 110 C.M.R. § 10.23(d).

A Fair Hearing appellant has the right to seek review of a Fair Hearing decision under the provisions of Massachusetts General Laws ch. 30A.  *See* 110 C.M.R. § 10.30; Mass. Gen. Laws ch. 30A, § 14.  "The [Massachusetts] supreme judicial court and the [Massachusetts] appeals court . . . have concurrent jurisdiction to review any proceedings had, determination made, and

orders or judgments entered in the superior court pursuant to [Massachusetts General Laws ch. 30A] section fourteen." Mass. Gen. Laws ch. 30A, § 15. *See generally Covell v. Dep't of Soc. Servs.*, 791 N.E.2d 877 (Mass. 2003) (describing the operation of the Registry and judicial review of an agency decision to list an individual in the Registry).

In her amended complaint, Plaintiff alleges that she appealed DCF's decision to support an allegation of medical neglect on December 31, 2008, but did not receive a Fair Hearing until 2010, after DCF gained custody of A.M. (Dkt. No. 27 at 4, ¶ 27), well after the 65-day time limit set forth in the regulations. *See* 110 C.M.R. § 10.10(1). Plaintiff appears to imply, but does not explicitly allege, that this delay contributed to her loss of parental rights to A.M. and was in violation of her due process rights.[3] For the reasons set forth below, this allegation fails to state a claim for a violation of Plaintiff's rights to substantive or procedural due process. *See* Fed. R. Civ. P. 12(b)(6).

First, the United States Supreme Court has held that "damage to one's reputation is not 'by itself sufficient to invoke the procedural protection of the Due Process Clause.'" *Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). "Essentially, the *Paul* court 'established what has come to be known as the "stigma-plus" test.'"

_____

[3] Claims based on alleged procedural defects in a Fair Hearing cannot arise under the Sixth Amendment to the United States Constitution, because "a party in a civil case does not have a constitutional or statutory right to adequate representation of counsel." *Cruz v. Municipality of Dorado*, 780 F. Supp. 2d 157, 159 (D.P.R. 2011) (citing *Sanchez v. U. S. Postal Serv.*, 785 F.2d 1236, 1237 (5th Cir. 1986); *Wolfolk v. Rivera*, 729 F.2d 1114, 1119-20 (7th Cir. 1984)). Any such claims cannot arise under the Fourth Amendment, which protects against unreasonable searches and seizures. Nor, so far as appears from the amended complaint, could any such claim be based on the AACWA. The only specific provision of the AACWA to which Plaintiff points in the amended complaint directs a state child welfare agency accepting federal funds to exercise due diligence in identifying adult relatives of a child who has been removed from a parent's custody. This provision has nothing to do with a state's maintenance of a registry of individuals whom a child welfare agency has identified as alleged perpetrators of child abuse or neglect (Dkt. No. 27 at 11, ¶¶ 99-101).

*Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005) (quoting *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001)). "Under this test, 'a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause.'" *Id.* at 1260 (quoting *Cannon*, 250 F.3d at 1302). Plaintiff has failed to identify any tangible interest that was infringed by her listing in the Registry. She has not alleged that she was denied employment or sought to foster or adopt a child and was prevented from doing so because she was listed in the Registry. "Nor does she allege that she would have looked for a job involving children and senior citizens, or would have sought to foster or adopt a child but for her being listed on the [Registry]." *McCaul v. Ardsley Union Free Sch. Dist.*, 514 Fed. Appx. 1, 4 (2d Cir. 2013) (unpublished) (allegations insufficient to state a plausible substantive due process claim).

Second, assuming that Plaintiff had adequately alleged an injury beyond the stigma of simply being listed in the Registry, the amended complaint would nonetheless fail to state a due process claim against these defendants. Plaintiff has plainly alleged that the Fair Hearing proceeding was not conducted on a timely basis and that this failure was in violation of DCF's regulations (Dkt. No. 27, ¶¶ 27-28). "A failure to meet state regulatory deadlines alone, however, does not establish a violation of federal due process." *Pease v. Burns*, 719 F. Supp. 2d 143, 152 (D. Mass. 2010) (citing *Morris v. City of Danville*, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984)); *see also Howard v. Malec*, 270 F. Supp. 2d 132, 141 (D. Mass. 2003) (the allegation that DCF regulations were violated was insufficient as a basis for a substantive due process violation). The constitutional significance of the delay must be "evaluated in light of 'the importance of the private interest and the harm to this interest occasioned by delay; the

13

justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.'" *Pease*, 719 F. Supp. 2d at 152 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988)).

To the extent the amended complaint implies that that DCF decision to support the allegation of medical neglect and include Plaintiff's name in the Registry affected the court's decision to terminate her parental rights to A.M., Plaintiff ignores that (a) these are separate processes; and (b) the regulations explicitly provide that the filing of a request for a Fair Hearing concerning a Registry listing "shall" not affect DCF's implementation of its decision to support a finding of medical neglect. *See* 110 C.M.R. § 10.09(1). Because DCF was entitled to proceed on the basis of its finding of medical neglect notwithstanding Plaintiff's Fair Hearing request, and the regulations do not provide that the outcome of a Fair Hearing request to cancel a Registry listing would or could affect the court proceedings that resulted in the loss of Plaintiff's parental rights, she has not alleged harm from DCF's delay in conducting the Fair Hearing proceeding. *See Pease*, 719 F. Supp. 2d at 153. Moreover, Plaintiff's allegations in her initial complaint foreclose the possibility that Plaintiff would be able to establish that the DCF decision that she challenged through the Fair Hearing process was in error. Her initial pleading establishes that DCF's decision to include her name in the Registry was *affirmed* by the hearing officer *and* on judicial review (Dkt. No. 1 at 5-6, 8-9, ¶¶ 12, 17). Plaintiff has "not alleged that an earlier hearing would have changed this outcome." *Pease*, 719 F. Supp. 2d at 153.[4]

Finally, and significantly, Plaintiff has failed to allege that any of the named defendants participated in the conduct that resulted in her being listed in the Registry. *See id.* at 154. "It is

---

[4] Furthermore, to the extent Plaintiff is seeking relief in this court from a final decision by the state courts to deny her appeal from a Fair Hearing decision, a fact that appears likely based on the allegations in her initial complaint, the *Rooker-Feldman* doctrine would deprive this court of jurisdiction over any such claim. *See Miller*, 86 F.3d at 59.

not enough to allege that the failure to conduct a Fair Hearing deprived [Plaintiff] of her procedural due process rights.  To state a viable section 1983 claim, a complaint must also set forth factual allegations demonstrating how [these] defendants caused the alleged constitution[al] violation though their own individual actions." *Id.* at 154-55.  *See also Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003) (dismissing claims against supervisory state welfare officials when the complaint failed to allege that supervisory personnel personally participated in placing the plaintiff's name on the Registry); *Wilmot*, 938 F. Supp. 2d at 141 (defendants were entitled to dismissal of the claims against them where the only allegations in the complaint that concerned them were allegations about their positions and roles within DCF). Because Plaintiff has failed to allege that any of the defendants named in the amended complaint has had anything to do with DCF's decision to list her name in the Registry, she has failed to state a claim for relief against any of these defendants.

    4.   <u>Plaintiff's Amended Complaint Fails to State</u>
           <u>Cognizable Claims (Counts I-VI)</u>

There are other reasons to dismiss Plaintiff's claims under § 1983 in Counts I, II, III and IV, which do not, in the context of this case, require extensive discussion.  Nonetheless, the court notes the following additional deficiencies in Plaintiff's amended complaint.  Plaintiff's Count I alleges a deprivation of procedural due process.  Having been deprived of her interest in the care, custody, and management of A.M., Plaintiff has, as she claims, been deprived of a constitutionally protected liberty interest.  *See Voltaire*, 2016 WL 4540837, at *7.  "In the child removal context, [procedural] due process ordinarily constitutes a court proceeding resulting in an order permitting removal."  *Id*.  In Plaintiff's initial complaint, she alleged that, after the Massachusetts Juvenile Court entered its judgment depriving her of her familial rights to care and custody of A.M., the judgment was appealed and affirmed by the Massachusetts Appeals

Court. Her request for further appellate review by the Massachusetts Supreme Judicial Court was denied (Dkt. No. 1 at 27-28, ¶¶ 58-60). Thus, Plaintiff received the process to which she was entitled in connection with the deprivation of her liberty interest in the care, custody, and management of A.M. *See id.* (citing cases); *see also Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 368 n.6 (D.P.R. 2015).

As to Plaintiff's substantive due process claim, even if this court were to find that the steps taken by DCF were excessive, the allegations in the amended complaint are insufficient to support a substantive due process violation. Where a plaintiff's substantive due process claim challenges the actions of state officers, "the plaintiff must show *both* that the acts [complained of] were so egregious as to shock the conscience *and* that they deprived [her] of a protected interest in life, liberty, or property." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (emphasis original). In order to shock the conscience, conduct must be "truly outrageous, uncivilized, and intolerable." *Hasenfus v. LaJeunesse*, 175 F.3d 68, 82 (1st Cir. 1999). As alleged, DCF's investigation of a pediatrician's allegation of medical neglect was not so "'extreme and egregious' or 'truly outrageous, uncivilized, and intolerable' so as to rise to the level of a due process violation." *Wilmot*, 938 F. Supp. 2d at 139 (quoting *Pagan*, 448 F.3d at 32); *see also Pineda v. Dep't of Children and Families*, Civil Action No. 16-12229-WGY, 2016 WL 7330575, at *3 (D. Mass. Dec. 14, 2016) (in the context of substantive due process claims related to children, a plaintiff must demonstrate that her separation from her children was so shocking, arbitrary and egregious that the Due Process Clause would not countenance it even if it was accompanied by full procedural protections).

As to Count III, claiming relief for ineffective assistance of counsel, Plaintiff cannot state a claim under the Sixth Amendment to the United States Constitution, because she has alleged

that she was a party to a civil case initiated by the Commonwealth and "a party in a civil case does not have a constitutional or statutory right to adequate representation of counsel." *Cruz v. Municipality of Dorado*, 780 F. Supp. 2d 157, 159 (D.P.R. 2011) (citing *Sanchez*, 785 F.2d at 1237; *Wolfolk v. Rivera*, 729 F.2d 1114, 1119-20 (7th Cir. 1984)); *see also Kloth-Zanard v. Malloy*, No. 3:15-cv-00124 (MPS), 2016 WL 5661977, at *5 (D. Conn. Sept. 29, 2016) (citing *Turner v. Rogers*, 564 U.S. 431, 441 (2011)) ("The Sixth Amendment, however, does not apply to civil cases."). The amended complaint also fails to allege a violation of Plaintiff's Fourth Amendment rights. Plaintiff admits that she consented to the entry of her home by two DCF social workers (Dkt. No. 27, at 3-4, ¶ 25). "The fact that the social workers may have advised [Plaintiff] of the seriousness of the situation, or of their right to conduct an investigation, or even of their right to remove the child[], does not negate [Plaintiff's] consent." *Wilmot*, 938 F. Supp. 2d at 137-38 (citing *Donald M.*, 668 F. Supp. at 712).

As to Plaintiff's claims in Count V and VI of the amended complaint, the Supreme Court has held that "[s]ection 1983 protects certain rights that are conferred by federal statutes." *Barricelli v. City of N.Y.*, No. 15 CV 5273-LTS-HBP, 2016 WL 4750178, at *3 (S.D.N.Y. Sept. 12, 2016) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)). The final two counts in Plaintiff's amended complaint purport to state claims under the AACWA, a "federal program that provides funding to a State for child welfare, foster care, and adoption assistance, provided the State has fashioned a State plan that meets certain requirements specified in the AACWA and that is approved by the Secretary of Health and Human Services." *Sam M. ex rel. Elliott v. Chafee*, 800 F. Supp. 2d 363, 383 (D.R.I. 2011). Plaintiff has not identified any specific provision of the AACWA in support of Count V. Rather, she asserts generally that the AACWA "focuses on keeping families together, children out of foster care, and family reunification" and that DCF

failed to comply with the AACWA when it failed to provide a service plan prior to petitioning the court for custody of A.M. and to offer the parents an opportunity to keep the family together (Dkt. No. 27 at 11, ¶¶ 96-97). The defendants contend that Count V fails to state a claim because it does not include a citation to a precise provision of the AACWA but instead alleges that the defendants violated the Act in its entirety (Dkt. No. 32 at 9). The court agrees.

As the defendants contend, courts considering claims under the AACWA are required to separately analyze provisions of the act to determine whether a particular provision creates enforceable rights. *See generally Barricelli*, 2016 WL 4750178. "It is insufficient for a Section 1983 plaintiff to assert generally that a particular statute creates enforceable rights. Rather plaintiffs must 'identify with particularity' the claim[ed] rights so that the court can 'ascertain whether each separate claim satisfies the various criteria' that the Supreme Court has identified as determinative of 'whether a federal statute creates rights.'" *Id.*, at *3 (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)). Plaintiff's Count V fails this test. To the extent, moreover, that Plaintiff relies on the AACWA in her amended complaint as support for a privately enforceable right against state officials requiring DCF to make reasonable efforts at family reunification, the United States Supreme Court held, in *Suter v. Artist M.*, 503 U.S. 347 (1992), that the AACWA did not give rise to a private right of action for any such claim.[5] For

---

[5] After *Suter* was issued, Congress enacted the so-called *Suter* fix. This legislation

> directed that in an action brought to enforce the provision of the laws governing Social Security (of which the AACWA is a part), the provision "is not to be deemed unenforceable because of its inclusion in a section . . . requiring a State plan or specifying the required contents of a State plan," but also provided that the new statute was "not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in [*Suter*] . . . but not applied in prior Supreme Court decisions respecting such enforceability." *The statute further provides that it was not intended to alter [Suter's] holding 'that section*

both of these reasons, Count V fails to state a cognizable claim.

As the defendants concede, Count VI in the amended complaint cites to a specific section of the AACWA, that being § 671(a)(29), which provides, in relevant part, as follows:

> [W]ithin 30 days after removal of a child from the custody of the parent or parents of the child, the state shall exercise due diligence to identify and provide notice to the following relatives: all adult grandparents and other adult relatives of the child (including any other adult relatives suggested by the parents), subject to exceptions due to family or domestic violence.

The requisite notice is intended to inform suitable adult relatives of a child removed from parental custody of any options the relative has to participate in the care and placement of the child and funds that may be available should the relative do so. *See* 42 U.S.C. § 671(a)(29)(A)-(D).

> "To determine whether a federal statute creates a privately enforceable right, courts must consider three factors: (1) 'Congress must have intended that the provision in question benefit the plaintiff'; 'the plaintiff must demonstrate that the right asserted protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence'; and (3) 'the statute must unambiguously impose a binding obligation on the States.'"

*Barricelli*, 2016 WL 4750178, at *3 (quoting *Walker v. Eggleston*, No. 04 CV 369-WHP, 2005 WL 639584, at *3 (S.D.N.Y Mar. 21, 2005) (quoting *Blessing*, 520 U.S. at 340-41))). *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287-90 (2002); *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 167-68 (D. Mass. 2011). District courts have "reached varying determinations as to private enforceability of numerous provisions of the AAWCA." *Baricelli*, 2016 WL 4750178, at *4. So far as the court has been able to determine, no court has considered whether §

---

> *671(a)(15) of [the AAWCA] is not enforceable in a private action."* 42 U.S.C.S. § 1320-a-2.

*Barricelli*, 2016 WL 4750178, at *4 (emphasis supplied). Section 671(a)(15) of the AACWA, which is not enforceable by a private right of action, provides that, before removing a child from the home, the State must make reasonable efforts to prevent or eliminate the need to remove the child from the home. *See Suter*, 503 U.S. at 351.

671(a)(29) creates a private right of action. The defendants argue that it does not. The court agrees that, at least as to Plaintiff, it does not.

First, before a federal funding statute will be found to create a private right of action, "its text must be 'phrased in terms of the persons benefited.'" *Gonzaga Univ.*, 536 U.S. at 284 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 692 n.13 (1979)). The text of the introductory portion of the AAWCA is not phrased in terms of any persons intended to be benefited by the Act. It might be possible to read the text of § 671(a)(29) as conferring an enforceable private right to kinship notification on a child removed from the care and custody of his or her parent or parents because the notification appears intended to benefit the child in terms of potential residential placements, but it is not possible to read the statute as conferring rights on the parent from whose custody the child is removed except to the limited extent that such a parent may suggest names of adult relations to the relevant social services agency. Here, Plaintiff is suing on her own behalf, not on behalf of A.M. As a parent from whom a child has been removed, Plaintiff is not sufficiently identified in § 671(a)(29) as a person intended to be benefited by its provisions.

Second, § 671(a)(29) provides that a participating state must "exercise due diligence" to identify adult relations of a child removed from parental custody who are entitled to receive notice under its provisions. In contrast to the provisions of § 671(a)(29)(A)-(D), which set forth the required contents of the notices with great specificity, the term "due diligence" fails to provide clear guidance or notice to a state of what is required of it in terms of identifying relatives of a child to whom notice must be provided. *See Barricelli*, 2016 WL 4750178, at *7 (a right to "quality services" to protect a child's health and safety uses a term too vague and amorphous to give rise to a privately enforceable right under § 671(a)(22) of the AAWCA); *B.K.*

*v. N.H. Dep't of Health and Human Servs.*, 814 F. Supp. 2d 59, 71 (D.N.H. 2011) (term "diligent recruitment" employed in 42 U.S.C. § 622(b)(7) of the Social Security Act fails to provide sufficient guidance or notice to the state of what is required to create any privately enforceable right of action).

For these reasons, the court agrees with the defendants that Count VI of the amended complaint, in addition to failing to supply a basis for any of the relief sought by the Plaintiff, also fails to state a claim upon which relief can be granted.

IV.   CONCLUSION

For all of the foregoing reasons, the court recommends that Plaintiff's claims in Counts I-VI of the complaint be dismissed with prejudice insofar as they seek punitive or compensatory damages or the payment of fees or costs or prospective injunctive relief because the court cannot order any such relief against these defendants, and that Counts I-VI be dismissed with prejudice for the additional reason that Plaintiff has not stated any cognizable claim under § 1983 against any of these defendants.[6]

---

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Dated: May 4, 2017                              /s/ Katherine Robertson
                                                KATHERINE ROBERTSON
                                                UNITED STATES MAGISTRATE JUDGE